# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| ERIC ROMANO, et al., individually and on behalf of all others similarly situated,<br><br>      Plaintiffs,<br><br>   v.<br><br>JOHN HANCOCK LIFEINSURANCE COMPANY (U.S.A.),<br><br>      Defendant. | S.D. Fla. Case No.<br><br><br><br>**JURY TRIAL DEMANDED** |

# CLASS ACTION COMPLAINT

Plaintiffs, based on personal knowledge as to themselves, and upon information and belief as to all other matters, allege as follows:

## NATURE OF CLAIMS

1. Plaintiffs are the trustees of the Romano Law, PL 401(k) Plan ("Plan"). Plaintiffs, as trustees of the Plan, purchased a Group Variable Annuity Contract ("Contract") from Defendant. *See* **Exhibit A**. Plaintiffs bring this action pursuant to § 502(a)(2) and (3) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(2) and (3), on behalf of the Plan and all trustees, sponsors and administrators of all "employee benefit plans" under ERISA, 29 U.S.C. § 1002(1), that owned variable annuity contracts from Defendant (the "Class").

2. As more fully set forth below, Defendant is a fiduciary of the Plan pursuant to ERISA, and as such, owes the Plan a duty of loyalty and has a duty not to engage in prohibited transactions. These duties are set forth in ERISA §§ 404 and 406, 29 U.S.C. §§ 1104 and 1106, and in Department of Labor Regulations, 29 C.F.R. § 2550. Defendant breached these duties by improperly retaining, for its own benefit, foreign tax credits or deductions arising from assets and investments held for the benefit of the Plan. As a result of these breaches, Defendant was overpaid for services rendered under the Contract, and the Plan's assets were diminished by the amount of the foreign tax credits retained by Defendant but not credited to the Plan and the income those overcharges would have earned had they been properly credited to the Plan's Account. Plaintiffs seek damages and equitable relief on behalf of themselves and the Class.

## JURISDICTION AND VENUE

3. Plaintiffs' claims arise under and pursuant to ERISA § 502, 29 USC § 1132.

4. This Court has subject matter jurisdiction over this action pursuant to ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1), and 28 U.S.C. § 1331.

5. This Court, pursuant to 29 U.S.C. § 1132(e), has personal jurisdiction over Defendant, because the Defendant is found in this District, the Plan is administered in this District, the breaches occurred in this District, and the Defendant may be served in any other District in which it resides or may be found. Defendant has an office in this District, located at 1101 Brickell Avenue, Miami, Florida, 33131, where its employees who are identified as relationship managers for the Contract are located. Defendant engages in substantial business in this District.

6. Venue is proper in this District because the Plan is administered in this District, the breaches occurred in this District, and the Defendant is found in this District.

## THE PARTIES

7. Plaintiff Eric Romano is a principal of Romano Law PL, serves as a trustee of the Plan, and resides in this District.

8. Plaintiff Todd Romano is a principal of Romano Law PL, serves a trustee of the Plan, and resides in this District.

9. Defendant John Hancock Life Insurance Company (U.S.A.) is a Michigan corporation with its principal place of business in Boston, Massachusetts.

## GENERAL FACTUAL ALLEGATIONS

10. The Plan is an Employee Benefit Plan within the meaning of ERISA § 3(3) and 3(2)(A), 29 U.S.C. § 1002(3) and 1002(2)(A). The purpose of the Plan is to provide retirement benefits to Plan Participants.

11. The Plan is a "defined contribution" or "individual account" plan within the meaning of ERISA § 3(34), 29 U.S.C. § 1002(34). The Plan provides individual accounts for each Participant and pays benefits to each Participant based solely upon the amount of money in his or her individual account. Thus, the amount of benefits received by each Participant in the Plan is not set by contract (as it is in a "defined benefit" plan), but rather, depends upon the amount of money invested in the Participant's account, the performance of the account's investments, and—critically—the fees charged by the companies who manage the money. The Plan is a typical 401(k) retirement plan, similar to those offered by employers and administered or serviced by Defendant throughout the country.

12. The Contract between Plaintiffs and Defendant became effective on October 7, 2014.

13. The Contract provides that Defendant will hold and manage assets paid by the Plan to Defendant ("Assets") in an account maintained by Defendant, which is segregated from Defendant's general funds (the "Separate Account").

14. The Separate Account is a bookkeeping entry in Defendant's books and records.

15. The Contract requires Defendant to invest the Assets and credit or charge any income, gains, or losses from investment of the Assets held and managed by Defendant in the Separate Account to the Separate Account, but provides that the Separate Account is not chargeable with liabilities arising out of Defendant's other business.

16. Defendant is required to record and maintain accounts showing each Participant's contributions to the Plan, the investment of those contributions and the fees, gains, and losses associated with those investments. These records are referred to as "Participant Accounts." The Participant Accounts are merely bookkeeping entries within the Separate Account.

17. Subject to the terms of the Contract and a penalty fee, the Plan has the contractual right to be paid by Defendant the value of the Assets allocated to the Separate Account.

18. Subject to the terms of the Contract and a surrender fee in certain circumstances, the Plan also has the contractual right, on behalf of any Participant or beneficiary, to be paid by Defendant the value of the Assets allocated to the Participant's Account.

19. The proportion of the Separate Account allocated to each investment option is determined by Plan Participants, subject to certain restrictions in the Contract.

20. Defendant established and maintained a variety of investment options pursuant to the Contract, including a variety of mutual fund investment options.

21. To invest Assets in a particular mutual fund, a Plan Participant selects the mutual fund into which he or she wants the Assets in his or her Participant Account invested.

22. Defendant offers the mutual funds through so-called "Sub-accounts," which are bookkeeping records established and maintained by Defendant to account for investment in the mutual funds by retirement plans such as the Plan.

23. A Sub-account is maintained for each mutual fund offered by Defendant under the Contract.

24. As part of its recordkeeping duties, Defendant allocates Assets in the Participant Accounts to the particular Sub-account that invests in the corresponding mutual fund.

25. Upon information and belief, and consistent with industry practice, Defendant permits other plans that are members of the Class to allocate assets to the same Sub-accounts available to the Plan.

26. All assets invested by all Separate and Participant Accounts established and maintained by Defendant pursuant to variable annuity contracts in a particular mutual fund are accounted for and pooled in a single Sub-account.

27. Defendant buys shares of a mutual fund in its own name with its own assets in an amount equal to the value of the total amount pooled in the respective Sub-account. Defendant records an amount for the mutual fund shares it owns in the Sub-account.

28. Separate and Participant Account "interests" in the mutual fund are accounted for as bookkeeping entries, which show "units" of interest in the Sub-account.

29. Defendant invests on an aggregate basis all of the asset allocations accounted for in a Sub-account. For example, if Participant A instructs Defendant to "buy" $150 worth of XYZ Mutual Fund, and Participant B instructs Defendant to "sell" $100 of the same fund, Defendant makes inter-account bookkeeping adjustments to credit Participant A's account for $100 worth of "units" of the Sub-Account invested in XYZ Mutual Fund, and debits Participant B's account for $100 worth of that Sub-account's units. Defendant then purchases $50 worth of shares of the mutual fund in its own name, and credits $50 to the XYZ Mutual Fund Sub-account and to Participant A's Participant Account. Only after netting the "purchase" and "sale" instructions of all of the Separate and Participant Accounts allocated to a particular Sub-Account does Defendant actually purchase or sell shares of the mutual fund. Upon information and belief, Defendant engages in only one such transaction per day with each mutual fund.

30. Several of the mutual funds included as investment options for Defendant's variable annuity contracts invest in stocks and securities of foreign companies. Plan Participants allocated Assets to several of these mutual funds, including the iShares MSCI EAFE Value Exchange Traded Fund, the Dodge & Cox International Stock Fund, the iShares MSCI EAFE

Growth Exchange Traded Fund, the American Funds Capital World Growth & Income Fund, the American Funds New Perspective Fund, the Vanguard Total World Stock Exchange Traded Fund, and the American Funds New World Fund (collectively, without limitation, "International Investment Options").

31.  Mutual funds that invest in stocks or securities of foreign companies, including the International Investment Options, are required to pay taxes on income derived from such investments to the foreign countries where the foreign companies are domiciled or in which the income is derived.

32.  The Internal Revenue Code (the "Code") taxes all income of U.S. taxpayers earned worldwide. 26 U.S.C. § 61(a). Because this can result in double taxation of a U.S. taxpayer's income earned abroad—by the country in which it was earned as well as the United States—Congress enacted the "foreign tax credit" system.  It provides that, when a U.S. taxpayer pays income tax to another country due to its business activities in that country, the taxpayer can claim a dollar-for-dollar credit against its U.S. tax liability for the foreign taxes paid., subject to certain limits.  26 U.S.C. §§ 901-909.  This "foreign tax credit" then mitigates double taxation by offsetting the taxpayer's U.S. taxable income and reducing the taxpayer's overall tax bill.

33.  The Code permits certain regulated investment companies, including mutual funds, to pass through tax credits to their shareholders. 26 U.S.C. § 853.  Many mutual funds that invest in foreign stocks and securities, including the International Investment Options, elect to operate under this provision and pass through foreign tax credits to their shareholders.

34.  Under 26 U.S.C. § 853, the International Investment Options passed through foreign tax credits to Defendant based on Plan Assets allocated to the International Investment Options from the Plan's Participant Accounts ("Plan Foreign Tax Credits").

35. Defendant, however, retained the benefit of the Plan Foreign Tax Credits and did not credit the Plan's Separate Account or Participant Accounts in an amount equal to the value of the Plan Foreign Tax Credits it retained.

36. Nor did Defendant disclose its receipt and retention of the Plan Foreign Tax Credits in the Contract or its ERISA 408(b)(2) disclosure statements.

37. On information and belief, Defendant used the Plan Foreign Tax Credits to reduce its tax liability to the U.S. government.

38. The Contract and the Supplemental Information Guide, *see* **Exhibit B**, which is incorporated in the Contract, describe the fees that Defendant may charge the Plan for providing services. The Contract and Supplemental Information Guide provide that such fees will be reduced through credits that the Plan and Participant Accounts will receive, on a quarterly basis, for the asset-based compensation that Defendant or its intermediaries receive from the mutual funds in which Participant Accounts allocate their assets. Defendant breached this provision by failing to credit the Plan and Participant Accounts by an amount equal to the value of the Plan Foreign Tax Credits it received and retained.

39. The Contract and Supplemental Information Guide also describe the other income and revenue Defendant and its intermediaries may receive in connection with the Contract, including float income and indirect compensation from the underlying funds, but in violation of Defendant's disclosure obligations under ERISA and Department of Labor regulations, it fails to disclose the compensation it receives in the form of retained Plan Foreign Tax Credits in both the Contract and its ERISA 408(b)(2) disclosure statements, one of which was made on or around August 31, 2018.

40. ERISA defines a "fiduciary" as anyone who exercises any discretionary authority or control over the management or disposition of Plan Assets, or anyone who has any discretionary authority or responsibility in the administration of a plan. 29 U.S.C. §1002(21)(A).

41. Defendant has and exercises discretionary authority and control over the management or disposition of Plan Assets, and has and exercises discretionary authority and responsibility in the administration of the Plan. Defendant uses its custody or control over the Sub-accounts, Separate Account, and Participant Accounts to obtain the Plan Foreign Tax Credits, and to credit and charge the Separate Account and Participant Accounts for income and fees associated with allocations to International Investment Options and other mutual funds. Defendant is also a fiduciary by virtue of all the actions it can and does take pursuant to the Contract. Specifically, the asset of the Plan is a right to payment from Defendant in an amount equal to the value of the Assets, net of any gains, losses, and charges. Defendant has discretionary authority and control over the management, calculation, or disposition of this payment and the investments, which affected the value of the payment. For example, Defendant accepted Plan contributions, managed the Separate and Participant Accounts, selected the investment options in which the Accounts were permitted to invest, negotiated with mutual fund companies the terms pursuant to which the funds would be included as investment options, purchased and sold mutual fund shares the performance of which determined the amount of the payment, and received and retained the Plan Foreign Tax Credits. Accordingly, Defendant is a fiduciary under ERISA.

42. Defendant is also a fiduciary as to Plan Foreign Tax Credits specifically. The Plan Foreign Tax Credits themselves constitute Assets in Defendant's hands because: (a) Defendant received the Plan Foreign Tax Credits as a result of its fiduciary status or function (i.e., because

Defendant receives foreign tax credits from mutual funds in connection with its role in managing and administering the Plan); and (b) the Plan Foreign Tax Credits were distributed by the International Investment Options and received by Defendant at the expense of the Plan and its participants, because the payment of the foreign taxes reduced Plan Assets but Defendant exclusively retained the corresponding benefit of such tax payments through the tax credits. Defendant is therefore a fiduciary with respect to the Plan Foreign Tax Credits because it has and exercises discretionary authority or control respecting their management or disposition by arranging for, accepting, and retaining them.  Plaintiffs' claims against Defendant arise from Defendant's handling of the Separate and Participant Accounts.

43. ERISA imposes on a plan fiduciary the duty of loyalty, which requires it to discharge its duties with respect to a plan solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants and their beneficiaries.

44. The duty of loyalty entails a duty to avoid conflicts of interest and to resolve them promptly when they occur. A fiduciary must always administer a plan with an eye exclusively to the interests of the participants and beneficiaries, regardless of the interests of the fiduciaries themselves or the plan sponsor.

45. ERISA § 406(b)(1) also prohibits a fiduciary from dealing with assets of a plan for its own interest or account.  29 U.S.C. § 406 (b)(1).

## CLASS ACTION ALLEGATIONS

46. The Class's claims all derive directly from a single course of conduct by Defendant.  This case is about the responsibility of Defendant, at law and in equity, for its wrongful conduct.  Defendant has engaged in uniform and standardized conduct toward

Plaintiffs and the Class with respect to foreign tax credits. It did not differentiate in its actions or inactions, or in the content of its statements or omissions, among individual Class members. The objective facts on these subjects are the same for all Class members. Within each Claim for Relief asserted by the Class, the same legal standards govern. Accordingly, Plaintiffs bring this lawsuit as a class action on their own behalf and on behalf of the following Class: all trustees, sponsors and administrators of all "employee benefit plans" under ERISA, 29 U.S.C. § 1002(1), that owned variable annuity contracts from Defendant, pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3) and/or (b)(2) and/or (c)(4). This action satisfies all requirements of those provisions, including numerosity, commonality, typicality, adequacy, predominance, and superiority.

47. Excluded from each Class are Defendant and its employees, officers, directors, legal representatives, heirs, successors and wholly or partly owned subsidiaries or affiliates of Defendant; Class Counsel and their employees; and the judicial officers and their immediate family members and associated court staff assigned to this case.

**Numerosity**

48. This action satisfies the requirements of Fed. R. Civ. P. 23(a)(1). The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown at this time and can only be ascertained through appropriate discovery, Plaintiffs believe there are, at a minimum, thousands of members of the Class. The number and identity of class members is ascertainable and could easily be determined from the books and records of Defendant.

49. Plaintiffs anticipate providing appropriate notice to the certified Class, in compliance with Fed. R. Civ. P. 23(c)(1)(2)(A) and/or (B), to be approved by the Court after class certification, or pursuant to court order under Fed. R. Civ. P. 23(d).

**Predominance of Common Issues**

50. This action satisfies the requirements of Fed. R. Civ. P. 23(a)(2) and 23(b)(3) because questions of law and fact that have common answers that are the same for the Class predominate over questions affecting only individual Class members. These include, without limitation, the following:

   a. whether Defendant was a fiduciary of the plans;

   b. whether Defendant breached its fiduciary duties by retaining and failing to disclose its retention of foreign tax credits;

   c. whether the plans were injured by such breaches; and

   d. whether the Class is entitled to damages and injunctive relief.

**Typicality**

51. This action satisfies the requirements of Fed. R. Civ. P. 23(a)(3), because Plaintiffs' claims are typical of the claims of the members of the Class, the claims of Plaintiffs and members of the Class arise from the same course of conduct by Defendant, and Plaintiffs and members of the class sustained the same type of injuries from such conduct. The relief Plaintiffs seek is typical of the relief sought for the absent Class members.

**Adequate Representation**

52. Plaintiffs will fairly and adequately represent and protect the interests of the Classes. Plaintiffs have retained counsel with substantial experience in prosecuting complex class actions.

53. Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the Class and have the financial resources to do so. Neither Plaintiffs nor their counsel have interests adverse to those of the Classes.

**Superiority**

54. This action satisfies the requirements of Fed. R. Civ. P. 23(b)(2) because Defendant has acted on grounds generally applicable to the Class, thereby making appropriate final injunctive and/or corresponding declaratory relief with respect to the Class as a whole.

55. This action satisfies the requirements of Fed. R. Civ. P. 23(b)(3) because a class action is superior to other available methods for the fair and efficient adjudication of this controversy. The common questions of law and of fact regarding Defendant's conduct and responsibility predominate over any questions affecting only individual Class members.

56. Because the damages suffered by each individual Class member may be relatively small, the expense and burden of individual litigation would make it very difficult or impossible for individual Class members to redress the wrongs done to each of them individually, such that most or all Class members would have no rational economic interest in individually controlling the prosecution of specific actions, and the burden imposed on the judicial system by individual litigation by even a small fraction of the Class would be enormous, making class adjudication the superior alternative under Fed. R. Civ. P. 23(b)(3)(A).

57. The conduct of this action as a class action presents far fewer management difficulties, far better conserves judicial resources and the parties' resources, and far more effectively protects the rights of each Class member than would piecemeal litigation. Compared to the expense, burdens, inconsistencies, economic infeasibility, and inefficiencies of individualized litigation, the challenges of managing this action as a class action are substantially

outweighed by the benefits to the legitimate interests of the parties, the Court, and the public of class treatment in this Court, making class adjudication superior to other alternatives, under Fed. R. Civ. P. 23(b)(3)(D).

58.     Plaintiffs are not aware of any obstacles likely to be encountered in the management of this action that would preclude its maintenance as a class action. Rule 23 provides the Court with authority and flexibility to maximize the efficiencies and benefits of the class mechanism and reduce management challenges. The Court may, on motion of Plaintiffs or on its own determination, certify nationwide classes for claims sharing common legal questions; utilize the provisions of Rule 23(c)(4) to certify any particular claims, issues, or common questions of fact or law for class-wide adjudication; certify and adjudicate bellwether class claims; and utilize Rule 23(c)(5) to divide any Class into subclasses.

## REALLEGATION AND INCORPORATION BY REFERENCE

59.     Plaintiffs reallege and incorporate by reference all of the preceding paragraphs and allegations of this Complaint, including the Nature of Claims, Factual Allegations, and Class Action Allegations, as though fully set forth in each of the following Claims for Relief asserted on behalf of Plaintiffs and the Class.

## CLAIMS FOR RELIEF

## COUNT 1

### Breach of Fiduciary Duty

60.     The Assets in the Separate Account, together with any income, gains or losses credited to or charged against the Account, were to be held and managed by Defendant for the exclusive benefit of the Plan and its Participants.

61. Defendant received and retained Plan Foreign Tax Credits solely as a result of its exercise of its duties under the Contract in that, but for those duties, Defendant would not have had authority or control over the management or disposition of Plan Assets and would not have received the Plan Foreign Tax Credits. The Plan Foreign Tax Credits are Assets of the Plan.

62. Had Defendant properly exercised its duties, the expenses and fees under the Contract charged against the Assets would have been reduced by the amount of the Plan Foreign Tax Credits.

63. By receiving and retaining Plan Foreign Tax Credits for its own benefit, and by failing to appropriately disclose its retention of Plan Foreign Tax Credits, Defendant failed to perform its duties for the sole benefit of the Plan, in breach of its fiduciary duty of loyalty.

64. As a consequence of Defendant's breaches, the Plan suffered losses equal to the amount of the Plan Foreign Tax Credits, together with any amounts that could have been earned thereon.

65. Defendant is liable to personally make good to the Plan any losses to the Plan resulting from each breach under 29 U.S.C. § 502(a)(2).

66. Pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), the Court should award equitable relief to the Class.

## COUNT 2
### Prohibited Transactions

67. ERISA § 406 (b)(1), 29 U.S.C. § 406 (b)(1), prohibits a fiduciary from dealing with assets of a plan for its own interest or account.

68. Defendant violated this provision in that it received and retained Assets of the Plan for its own interest through its receipt and retention of the Plan Foreign Tax Credits.

69. ERISA § 406 (b)(3), 29 U.S.C. § 406 (b)(3), prohibits a fiduciary from receiving consideration from any party dealing with a plan in connection with a transaction involving assets of the plan.

70. Defendant violated this provision in that it received Foreign Tax Credits from third parties dealing with the Plan concerning Plan investments and the payment of foreign taxes in connection therewith.

71. Defendant's receipt and retention of the Foreign Tax Credits, without crediting the Plan and Participant Accounts in an amount equal to the value of the Foreign Tax Credits, are transactions prohibited by ERISA.

72. Defendant is liable to personally make good to the Plan any losses to the Plan resulting from these prohibited transactions under 29 U.S.C. § 502(a)(2).

73. Pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), the Court should award equitable relief to the Class.

## **PRAYER FOR RELIEF**

Plaintiffs, on behalf of themselves and all others similarly situated, request the Court to enter judgment against Defendant, as follows:

A. An Order determining that the instant action may be maintained as a class action under Rule 23, Federal Rules of Civil Procedure, appointing Plaintiffs as class representatives and determining that Plaintiffs' counsel satisfies the prerequisites of Rule 23(g);

B. Declaratory Judgment that Defendant breached ERISA fiduciary duties owed to the Plan and Participants;

C. An Order compelling Defendant to make good to the Plan all losses to the Plan resulting from Defendant's breaches of fiduciary duty and violations of ERISA;

D. Imposition of a Constructive Trust on any amounts by which Defendant was unjustly enriched at the expense of the Plan as the result of breaches of fiduciary duty or violations of ERISA;

E. An Order for equitable restitution and disgorgement of any Plan assets Defendant obtained as a result of its breaches of fiduciary duty, including receipt of the Plan Foreign Tax Credits, and other appropriate equitable monetary relief against Defendant.

F. An Order permitting the withdrawal of any and all amounts payable under the Contract without imposition of a surrender fee;

G. An Order enjoining Defendant from any further violations of its ERISA fiduciary obligations;

H. Actual damages paid to the Plan in the amount of any losses the Plan suffered;

I. An Order allocating the Plan's recoveries to the accounts of all Participants;

J. An award of attorneys' fees and costs, as allowed by law;

K. An award of prejudgment and post judgment interest, as provided by law;

K. Leave to amend this Complaint to conform to the evidence produced at trial; and

L. Such other relief as may be appropriate under the circumstances.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a jury trial as to all issues triable by a jury.

DATED: March 25, 2019                                **PODHURST ORSECK, P.A.**

 /s/ *Matthew P. Weinshall*
Peter Prieto (FBN 501492)
John Gravante  (FBN 617113)
Matthew P. Weinshall (FBN 84783)
Alissa Del Riego (FBN 99742)
SunTrust International Center
One Southeast 3rd Ave, Suite 2300
Miami, Florida 33131
Phone: (305) 358-2800
Fax: (305) 358-2382
pprieto@podhurst.com
jgravante@podhurst.com
mweinshall@podhurst.com
adelriego@podhurst.com


**SEARCY DENNEY SCAROLA BARNHART & SHIPLEY P.A.**
Christian D. Searcy  (FBN 158298)
Jack Scarola (FBN 169440)
Boris L. Zhadanovskiy (FBN 1002923)
2139 Palm Beach Lakes Blvd.
West Palm Beach, FL 33409
Phone: (561) 686-6300
Fax: (561) 383-9467
 searcyteam@searcylaw.com
 scarolateam@searcylaw.com
 zhadanovskiyteam@searcylaw.com


*Counsel for Plaintiffs*