**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**CASE NO. 19-21147-CIV-GOODMAN**
**[CONSENT CASE]**

ERIC ROMANO, *et al.*,

      Plaintiffs,

v.

JOHN HANCOCK LIFE INS. CO. (USA),

      Defendant.

_____/

**ORDER ON DEFENDANT'S MOTION TO STRIKE JURY TRIAL DEMAND**

Plaintiffs Eric and Todd Romano, trustees of an ERISA defined contribution plan ("Romano" or the "Plaintiffs"), filed a two-count lawsuit against Defendant John Hancock Life Ins. Co. (USA), which sold them, as trustees of a 401(k) Plan, a Group Variable Annuity Contract. [ECF No. 1, (the "Complaint" or "Compl.")]. Suing on behalf of a putative class of persons who owned variable annuity contracts from John Hancock, Plaintiffs demanded a jury trial. *Id.* John Hancock filed a motion to strike the jury trial demand, along with a supporting memorandum. [ECF Nos. 51-52]. Plaintiffs filed a response, John Hancock filed a reply, the Court held a two-hour hearing, and the Parties filed post-hearing memoranda. [ECF Nos. 54; 55; 59; 61; 62].

For the reasons outlined in greater detail below, the Undersigned **denies** John Hancock's motion to strike the jury trial demand.

Although some courts say that there is no jury trial right at all for ERISA claims, that bold proclamation sweeps too broadly. ERISA claims *frequently* do not permit a jury trial, but that is not *always* the status. Jury trials are permitted in appropriate circumstances. Determining whether there is a jury trial right in an ERISA claim requires a court to (1) compare the claim to actions brought in the courts of England before the merger of the courts of law and equity and (2) examine the remedy to see if it is legal (which favors a jury trial) or equitable (which militates against a jury trial). The second prong is the more important one, and courts sometimes conclude that a jury trial right exists even if the first element weighs against a jury trial.

Plaintiffs do in fact seek equitable relief, and they admit that they are not entitled to a jury trial for those equitable remedies. But they also seek non-equitable remedies under Section 502(a)(2) of ERISA, such as "actual damages paid to the Plan in the amount of any losses the Plan suffered." [ECF No. 1, p. 16]. They are entitled to a jury trial for those under the Seventh Amendment. The mere fact that Plaintiffs are seeking equitable remedies does not deprive them of their jury trial right for the legal remedies.

## I.   <u>Factual Background</u>

Plaintiffs Eric Romano and Todd Romano are trustees of the Romano Law, PL 401k Plan (the "Plan"). [ECF No. 1, ¶ 1]. The Plan is a defined contribution plan under ERISA, which allows participating employees to invest in options made available by the plan trustees. *Id*. at ¶ 11. Through their financial advisor, Plaintiffs purchased a group variable

annuity contract (the "Contract") from John Hancock to make recordkeeping services and investments available for Plan participants. *Id*. at ¶ 1.

Plaintiffs' Complaint asserts two claims against John Hancock relating to tax credits attendant to investments that Plaintiffs chose for their Plan under the Contract that "invest in stocks and securities of foreign companies." *Id*. at ¶ 30 (defining these as "International Investment Options"). In Count I, Plaintiffs allege John Hancock breached the ERISA fiduciary duty of loyalty by receiving and retaining "Plan Foreign Tax Credits" with respect to the International Investment Options, resulting in alleged reduction in the value of the Plan's assets. *Id.* at ¶¶ 60-66. In Count II, Plaintiffs allege that John Hancock caused the Plan to enter into an ERISA prohibited transaction by not crediting their Plan with the value of Foreign Tax Credits. *Id*. at ¶¶ 67-73. Plaintiffs have sued on behalf of a putative class of "all trustees, sponsors and administrators of all 'employee benefit plans' under ERISA, 29 U.S.C. § 1002(1), that owned variable annuity contracts from" John Hancock. *Id*. at ¶ 46. Under both Count I and Count II, Plaintiffs seek equitable relief under ERISA against John Hancock. *Id*. at ¶¶ 65-66, 72-73.

In Count I, Plaintiffs allege John Hancock is "liable to personally make good to the Plan any losses to the Plan resulting from each breach under 29 U.S.C. § 502(a)(2)." *Id*. at ¶ 65. Similarly, in Count II, Plaintiffs seek the same relief in alleging John Hancock is "liable to personally make good to the Plan any losses to the Plan resulting from these prohibited transactions under 29 U.S.C. § 502(a)(2)." *Id*. at ¶ 72. Plaintiffs further allege in

both Count I and Count II that "[p]ursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), the Court should award equitable relief to the Class." *Id.* at ¶¶ 66, 73. Plaintiffs also seek relief in the form of a declaratory judgment that John Hancock breached fiduciary duties and violated ERISA; a constructive trust on amounts that result from the alleged breaches; an injunction against further breaches and violations; and equitable restitution and other equitable relief. *Id.* at pp. 15-16.

Plaintiffs further "demand a jury trial as to all issues triable by a jury." *Id.* at p. 16.

## II.   <u>Applicable Legal Principles and Analysis</u>

Section 502(a) of ERISA provides, in subsections relevant here, that a civil action may be brought:

(2) by the Secretary, or by a participant, beneficiary or fiduciary for **appropriate relief under <u>section 1109[1]</u> of this title;**

(3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan;

(emphasis added).

Section 1109, in turn, provides, in pertinent part, that:

(a) Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be *personally* **liable to make good to such plan any losses to the plan** resulting from each such breach, and to **restore to such plan any profits** of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such **other**

---

[1]      29 U.S. Code Section 1109 is also known as ERISA Section 409.

> **equitable** *or remedial relief* as the court may deem appropriate, including removal of such fiduciary. A fiduciary may also be removed for a violation of section 1111 of this title.

(emphasis added).

A motion to strike a jury demand is properly made pursuant to Federal Rule of Civil Procedure Rule 39, which provides:

> When a jury trial has been demanded under Rule 38 . . . trial on all issues so demanded must be by jury unless: . . . (2) the court, on motion or on its own, finds that on some or all of those issues there is no federal right to a jury trial.

Fed. R. Civ. P. 39.

The "federal policy favoring jury trials is of historic and continuing strength." *Simler v. Conner*, 372 U.S. 221, 222 (1963). District Courts in the Southern District of Florida follow *Simler's* observation about the strong, traditional policy favoring jury trials. *See, e.g., Hughes v. Priderack Capital Partners, LLC*, No. 9:18-cv-80111, 2019 WL 771801, at *3 (S.D. Fla. Feb. 21, 2019) (denying motion to strike jury trial demand and holding that an unjust enrichment claim is a legal claim when plaintiff seeks damages as a remedy); *Manrique v. Fagan*, No. 08-60501, 2009 WL 700999, at *6 (S.D. Fla. May 16, 2009) (denying motion to strike jury trial demand).

The Seventh Amendment[2] to the United States Constitution codifies the right to a jury trial in federal court. *See* U.S. Const. amend. VII; *see also* Fed. R. Civ. P. 38(a). The

---

[2]     The Seventh Amendment provides that "[i]n Suits at Common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be

Seventh Amendment applies only to lawsuits in which legal rights are adjudicated, and not to actions in which only equitable rights and remedies are decided. *See Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry*, 494 U.S. 558, 564 (1990); *Granfinanciera v. Nordberg*, 492 U.S. 33, 41 (1989).

To determine whether a particular action will resolve legal rights and provide a right to jury trial or, conversely, will resolve only equitable rights and fall outside the Seventh Amendment's purview, courts apply a two-pronged test outlined in *Granfinanciera. See Granfinanciera*, 492 U.S. at 42.

When applying that test in a statutory action, such as the instant ERISA lawsuit, a court first compares the statutory claim to analogous 18th century actions brought in the courts of England prior to the merger of the courts of law and equity. *See id.* The court then determines whether the remedy sought is legal or equitable in nature by "examin[ing] both the nature of the issues involved and the remedy sought." *Terry*, 494 U.S. at 564 (internal quotations omitted). This second inquiry is the more important component of the analysis. *See id.* (citing *Granfinanciera*, 492 U.S. at 42); *see also United Mine Workers of Am. v. Am. Commercial Lines Transp. Serv., L.L.C.*, No. 4:08-CV-1777, 2010 WL 2245084, at *4 (E.D. Mo. Jun. 2, 2010).

---

preserved." U.S. Const. amend. VII. The right to a jury trial is to be "carefully preserved," where legal rights are at issue. *Chauffeurs, Teamsters, & Helpers Local No. 391 v. Terry*, 494 U.S. 558, 565 (1990).

Although not directly addressing the right to a jury trial, the Supreme Court's decision in *Great-West Life & Annuity Insurance Co. v. Knudson*, 534 U.S. 204 (2002), provides guidance with respect to the second, more-important portion of this inquiry. In *Great-West*, a health and welfare plan sued a beneficiary seeking injunctive and declaratory relief under ERISA § 1132(a)(3) to enforce the plan's reimbursement provision. *Id.* at 207. The provision required a beneficiary to reimburse the plan if she recovered any money from a third party in an action related to covered expenses. *Id.* The plan had covered the beneficiary's medical expenses when she was injured in a car accident. *Id.* Thereafter, she sued the driver of the car in tort, and recovered a sum of money through a settlement agreement. *Id.*

The Supreme Court held that the relief sought was not available under 29 U.S.C. § 1132(a)(3) because the relief sought was legal rather than equitable. *Id.* at 221. The Supreme Court reasoned that because Great-West sought to impose personal liability on the beneficiary for a contractual obligation to pay money, the claim was inherently a legal one. *Id.* at 221. A plaintiff seeking a "judgment imposing a merely personal liability upon the defendant to pay a sum of money" in return for "some benefit that defendant had received from him" seeks restitution at law, not in equity. *Id.* at 213.

By contrast, the Supreme Court noted that equitable restitution ordinarily takes "the form of a constructive trust or an equitable lien, where money or property identified as belonging in good conscience to the plaintiff can clearly be traced to particular funds

7

or property in the defendant's possession." *Id.* (citations omitted). Therefore, "for restitution to lie in equity, the action generally must seek not to impose on the defendant personal liability in the form of money damages, but to restore to the plaintiff particular funds or property in the defendant's possession." *Id.*

The first issue the Undersigned must determine is whether the Eleventh Circuit of Appeals has already decided the issue in a binding ruling. John Hancock contends the answer is "yes," while Plaintiffs take the position that the issue remains open in our circuit. Both positions concern an interpretation of a succinct sentence in a footnote in *Useden v. Acker*, 947 F.2d 1563, 1572 n. 12 (11th Cir. 1991), where the Court dropped a footnote containing the following comment: "The ERISA claims in the present case do not entitle plaintiff to a jury trial." *Id*.

Based on this one footnote from a 30-year-old opinion, John Hancock contends that the issue is foreclosed, and that binding circuit court precedent compels an order striking the jury trial demand here. The Undersigned is not convinced.

In *Useden*, one of the issues presented was whether the Eleventh Circuit should adopt a relaxed standard of review for all cases in which the district judge, rather than a jury, would be the ultimate trier of fact were the action to proceed to trial. *Id.* at 1572. To provide context and explain why the district court judge would be the finder of fact in that particular case, the court dropped the footnote quoted above. But nothing in the opinion, however, suggests that the plaintiff's right to a jury trial was ever litigated,

challenged, or appealed, so the Court's explanatory footnote cannot be fairly read as resolving the issue. To the contrary, it appears to be an unnecessary comment, made without the benefit of legal briefing.

In the Undersigned's view, this footnote is *dicta*, not a binding legal holding. If John Hancock's view is the correct one, then later-issued opinions following *Useden* would follow the purported precedent which John Hancock says was created by the footnote.

But that is not what happened.

Indeed, the *absence* of binding Eleventh Circuit authority on whether a Section 502(a)(2) claim carries a right to a jury trial is evident from district court opinions on both sides of the issue. Courts in this circuit have concluded that a right to a jury trial exists under Section 502(a)(2), while others, in reaching the opposite conclusion, have at least conceded that the issue remains undecided by the Eleventh Circuit. *See Chao v. Meixner*, No. 1:07-cv-1095, 2007 WL 4225069, at *5 (N.D. Ga. Nov. 27, 2007) (finding that a right to a jury trial exists under § 502(a)(2)); *Pledger v. Reliance Tr. Co.*, No. 1:15-CV-4444-MHC, 2017 WL 11568409, at *4 (N.D. Ga. Nov. 7, 2017) (noting that "the Eleventh Circuit has yet to address this issue"); *Ehlen Floor Covering, Inc. v. Lamb*, No. 2:07-CV-666-FTM-29, 2012 WL 1698351, at *2 (M.D. Fla. May 14, 2012) ("[T]he Court has not found [] a decision by the Eleventh Circuit resolving the issue of a right to jury trial on a § 502(a)(2) claim.").

So the Undersigned considers the issue to be open in this circuit because the one-sentence footnote is *dicta*, not necessary for the holding. *See generally Montanile v. Bd. of Trustees of the Nat'l Elevator Indus. Health Benefit Plan*, 577 U.S. 136, 148 n.3 (2016) (implicitly determining that a discussion of Section 502(a)(3) in *CIGNA Corp. v. Amara*, 563 U.S. 421 (2011) was *dicta* because it "was not essential to resolving that case," and holding that the Supreme Court's other interpretations of "equitable relief" in *Great-West* and other cases "remains unchanged").

At the first stage of the two-prong analysis, Plaintiffs' Section 502(a)(2) claims for breach of fiduciary duty and prohibited transactions must be compared to "18th-century actions brought in the courts of England prior to the merger of the courts of law and equity." *Tull v. United States*, 481 U.S. 412, 417-18 (1987).

"In 18th-century actions in England, claims for breach of fiduciary duty were commonly characterized as arising in equity." *Chao v. Meixner*, No. 1:07-CV-0595-WSD, 2007 WL 4225069, at *3 (N.D. Ga. Nov. 27, 2007) (citing Restatement (Second) of Trusts §§ 197, 199 (1959)); *see also Terry*, 494 U.S. at 565 ("Such actions [for breach of fiduciary duty] were within the exclusive jurisdiction of courts of equity.").

Thus, the first, less-important stage of the two-part test favors Defendant's position. But this does not mean that Plaintiffs here are not entitled to a jury trial on their Section 502(a)(2) claims. *See, e.g., Meixner*, 2007 WL 4225069, at *3 (denying motion to strike jury trial demand after concluding that first prong suggests that the cause of action

arose in equity because the second prong favored a jury trial, as it demands that defendants, as a matter of personal liability, compensate the plan for any losses incurred because of the misconduct).

The second, "more important" step of the analysis, *Nordberg*, 492 U.S. at 42, examines the nature of the remedy, and the Undersigned concludes that some of the remedies are legal, not equitable.

In requesting an "Order compelling Defendant to make good to the Plan all losses to the Plan resulting from Defendant's breaches of fiduciary duty and violations of ERISA," as well as "[a]ctual damages paid to the Plan in the amount of any losses the Plan suffered," Plaintiffs are seeking monetary relief akin to, or expressly in the form of, damages. [ECF No. 1, p. 16].

"Generally, an action for money damages was the traditional form of relief offered in the courts of law." *Terry*, 494 U.S. at 570 (internal quotation marks omitted). For this reason, some courts (albeit in non-binding cases) have held that beach-of-fiduciary-duty claims that seek monetary relief are legal in nature and thus give rise to a Seventh Amendment right to a jury trial. *See Cont'l Vineyard LLC v. Dzierzawski*, No. 12 C 3375, 2018 WL 11195945, at *2 (N.D. Ill. Apr. 5, 2018) (holding that "Plaintiffs have a right to have a jury decide their claim for damages" on a breach-of-fiduciary-duty claim); *Palmer v. Reali*, No. CV 15-994, 2017 WL 4319320, at *4 (D. Del. Sept. 28, 2017) ("Our second and more important finding is the thrust of the Trustee's damages request is legal relief and

this factor tips the scales in favor of finding the Trustee is entitled to a jury under the Seventh Amendment."); *Official Comm. of Unsecured Creditors v. Odom*, No. 1:09-CV-1293-BBM, 2009 WL 10699762, at *2 (N.D. Ga. Sept. 14, 2009) ("Even though claims for breach of fiduciary duty are historically actions in equity which carry no right to trial by jury, the Defendants are nevertheless entitled to a jury trial because the Committee seeks the legal remedy of money damages.").

Adopting this perspective under the Supreme Court's two-part test, several district courts have held that ERISA Section 502(a)(2) claims give rise to a Seventh Amendment right to a jury trial, and they therefore denied motions to strike a jury trial demand. *See Keokuk Area Hosp., Inc. v. Two Rivers Ins. Co.*, 228 F. Supp. 3d 892, 901 (S.D. Iowa 2017); *Hellman v. Catalado*, No. 4:12CV02177 AGF, 2013 WL 4482889, at *5 (E.D. Mo. Aug. 20, 2013); *Kirse v. McCullough*, No. 04-1067-CV-W-SOW, 2005 WL 6797091, at *3 (W.D. Mo. May 12, 2005); *Chao*, 2007 WL 4225069, at *3; *Bona v. Barasch*, No. 01 CIV. 2289 (MBM), 2003 WL 1395932, at *35 (S.D.N.Y. Mar. 20, 2003). The result in these cases is consistent with the Supreme Court's decision in *Terry*, where the Court, faced with a statutory cause of action akin to a claim for breach of fiduciary duty, but for which the plaintiffs sought money damages, held that the plaintiffs were entitled to a jury trial. 494 U.S. at 573.[3]

---

[3]      In response to a question from the Undersigned at the two-hour hearing, Plaintiffs' counsel listed *Kirse v. McCullough*, No. 04-1067-CV-W-SOW, 2005 WL 6797091, at *3 (W.D.

The actual text of the different subsections of Section 502(a) of ERISA also supports the conclusion that Plaintiffs' demand for damages is a legal claim generating a jury trial right.

In particular, Section 502(a)(3) is limited to "appropriate *equitable* relief," whereas Section 502(a)(2) makes available "appropriate relief." 29 U.S.C. 1132(a) (emphasis added). Numerous Supreme Court decisions have turned on the presence of the word "equitable" in Section 502(a)(3), which is noticeably and significantly absent from Section 502(a)(2). *See, e.g.*, *Montanile*, 577 U.S. at 146; *Amara*, 563 U.S. at 439; *Great-West*, 534 U.S. at 212; *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 258 (1993).

As the court in *Chao* reasoned, "Section 502(a)(2), on its face, thus permits legal remedies in addition to equitable remedies. The Supreme Court has noted that distinctions in ERISA between 'equitable' and 'remedial' remedies must be given effect." 2007 WL 4225069, at *2 (quoting *Mertens*, 508 U.S. at 258 n.8.)

Focusing on the specific text of Section 409 also supports a conclusion that Plaintiffs are entitled to a jury trial on some of their claims in this lawsuit. ERISA Section 502(a)(2) references "appropriate relief" under Section 409, and Section 409 uses the phrase "equitable **or remedial** relief." (emphasis supplied).

Section 409, codified at 29 U.S.C. 1109, provides that fiduciaries who breach their

---

Mo. May 12, 2005), and *Bona v. Barasch*, No. 01 CIV. 2289 (MBM), 2003 WL 1395932, at *35 (S.D.N.Y. Mar. 20, 2003), as the two best cases for Plaintiffs.

fiduciary duties "shall be personally liable to make good to such plan any losses . . . and shall be subject to such other equitable or remedial relief as the court may deem appropriate."

As the court reasoned in *Meixner*, the use of "appropriate relief" in Section 502(a)(2) is significant, because it contrasts with Section 502(a)(3)'s limitation of available remedies to "appropriate *equitable* relief." 2007 WL4225069, at *2; 29 U.S.C. §1132(a)(3) (emphasis added). "Section 502(a)(2), on its face, thus permits legal remedies in addition to equitable remedies." *Chao*, 2007 WL4225069, at *2. The *Meixner* Court found support for this interpretation of Section 502(a)(2) in the Supreme Court's decision in *Mertens*. In *Mertens*, the Court held that money damages were not available under Section 502(a)(3) because of the provision's limitation to "equitable relief." *Id.* at 257-58. By the same reasoning, the remedies available under Section 502(a)(2) -- which provides for "appropriate relief," without the "equitable" limitation that the Court found decisive in *Mertens* -- must be broader than just equitable remedies, i.e., they must include legal remedies as well.

Similarly, Section 502(a)(2)'s reference to Section 409 also supports the notion that Section 502(a)(2) authorizes legal relief (and therefore entitles Plaintiffs to a jury trial on those claims).

Under Section 409, a fiduciary is "personally liable to make good to such plan any losses to the plan resulting from each such breach." 29 U.S.C. §1109. In *Mertens*, the

Supreme Court construed this precise language as making a fiduciary "personally liable for *damages*," which the Court characterized as "the classic form of **legal** relief." 508 U.S. at 252, 255 (emphasis added).

Plaintiffs seek this exact form of relief in the complaint. [ECF No. 1, p. 16] (seeking an Order requiring "Defendant to make good to the Plan all losses to the Plan resulting from Defendant's breaches of fiduciary duty and violations of ERISA," as well as "[a]ctual damages paid to the Plan in the amount of any losses the Plan suffered"). The Court's clear statement in *Mertens* that this relief equates to damages, the classic form of legal relief, supports Plaintiff's argument.

During the hearing, John Hancock's counsel argued that Section 409's use of the phrase "equitable or remedial relief" excludes legal relief from the remedies available under Sections 408 and 502(a)(2). John Hancock asserted that argument in its post-hearing supplemental memorandum [ECF No. 62], emphasizing that the text does not expressly allow legal relief. Instead, it authorizes "equitable or remedial relief." *Id.* at p. 2. This distinction, it argues, is critical. Had the phrase been "equitable or legal relief," then, they concede, a jury trial right would exist. *Id.* at pp. 2-3. Pointing to the obvious fact that the statute does not use the term "legal" (i.e., it uses "remedial"), John Hancock contends that the statute does not authorize a jury trial for the type of clam being asserted here. *Id.*

The Undersigned is not convinced by John Hancock's argument.

In *Mertens*, the Court refused to construe "equitable" relief in Section 502(a)(3) "to mean all relief available for breach of trust at common law," because doing so would "deprive of all meaning the distinction Congress drew between 'equitable' and 'remedial' relief in § 409 (a), and between 'equitable' and 'legal' relief in the very same section of ERISA." 508 U.S. at 258. Under the Court's reasoning, therefore, the inclusion of both "equitable" and "remedial" relief in Section 409 authorizes "all relief available for breach of trust at common law," which included "money damages . . . against the trustee." *Id.* at 256-58.

In contrast, regarding all relief under Section 409 as "equitable" relief, as Defendant urges, would "deprive of all meaning the distinction Congress drew between 'equitable' and 'remedial' relief in § 409(a)," as well as the distinction between "appropriate relief" in Section 502(a)(2) and "appropriate equitable relief" in Section 502(a)(3), precisely what the Court refused to do in *Mertens*. *Id.* at 258.

 Moreover, to the extent that the words "remedial" and "legal" refer to different types of relief, it is far from clear that "remedial" relief is somehow *narrower* than "legal" relief" or that it is different in a way which would change the legal/equitable distinction which drives the two-part analysis.

As the dissent in *Mertens* noted, "remedial" relief is, if anything, *broader* than "legal" relief: "'[r]emedial,' after all, simply means 'intended as a remedy,'" and thus imposes no "limiting principle" on the available relief. *Id.* at 269 n.4 (White, J. dissenting)

(quoting Webster's Ninth New Collegiate Dictionary 996 (1983)) (emphasis added). The *Mertens* majority agreed with the dissent's criticism of the use of "remedial" in the provision, but still gave effect to the distinction between "equitable" relief and "*all* relief." *Id.* at 258 n.8 (emphasis in original).

Moreover, even if "remedial relief" in Section 409, contrary to the broad definition of remedial, were construed to mean something less than "legal relief," the language still would not support Defendant's position, because it applies only to the additional, "other" relief authorized in Section 409. *See* 29 U.S.C. §1109(a) ("[S]uch other equitable or remedial relief as the court may deem appropriate."). Thus, the language authorizing "other" relief cannot nullify the provision's express imposition of personal liability on a fiduciary to "make good to such plan any losses to the plan resulting from each such breach," 29 U.S.C. § 1109, which *Mertens* construed as making a fiduciary "personally liable for *damages*." 508 U.S. at 252 (emphasis added).

In determining whether a remedy is equitable or legal, the *Great-West* Court distinguished between "restitution *in equity* . . . where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession" and "restitution at law . . . [where the plaintiff] sought to obtain a judgment imposing a merely personal liability upon the defendant to pay a sum of money." 534 U.S. at 213-14. Plaintiffs here have not traced a particular fund

to John Hancock; they are seeking a monetary judgment against Defendant in order to make themselves whole -- relief authorized by Sections 502(a)(2) and 409.

John Hancock asks the Undersigned to follow *Kennedy v. Geronemus*, No. 10-61153, 2010 WL 11549886 (S.D. Fla. Nov. 4, 2010), where the Court granted a motion to strike a jury trial demand in a case grounded in ERISA. But that ruling did not include the required two-prong analysis, and the opinion simply stated that "there is no right to a jury trial under ERISA in the Eleventh Circuit" -- a sweeping statement which is unduly broad. *Id.* at *7.

Moreover, the *Geronemus* Court's basis for this ruling was *Broaddus v. Florida Power Corp.*, 145 F.3d 1283, 1287 n.** (11th Cir. 1998), which pronounced that [r]elief under ERISA **is limited to equitable remedies**." (emphasis added). But this 1998 opinion predated all of the more-recent Supreme Court cases discussed in this Order (e.g., *Nordberg*, 492 U.S. at 42; *Chauffeurs, Teamster & Helpers*, 494 U.S. at 564; *Mertens*, 508 U.S. at 258; *Great-West*, 534 U.S. at 212; *Amara*, 563 U.S. at 439; *Montanile*, 577 U.S. at 146).

In *Montanile,* involving an ERISA claim, the Supreme Court noted that the Plan said it was seeking an equitable remedy but it was actually not doing this under the specific facts because the fund had been dissipated, and the recovery was being sought from Defendants' general assets -- a **legal** type of claim. 577 U.S. at 145-46. So it is clear that the *Broaddus* Court's unequivocal, broad statement that ERISA claims are always limited to equitable remedies (and therefore can *never* be pursued in a jury trial) is no

longer good law. Based on these significant points, the Undersigned is not going to follow *Geronemus*, a non-binding opinion. To the contrary, and for the reasons outlined above, the Undersigned finds that some of the claims here are legal and therefore entitle Plaintiffs to a jury trial under the Seventh Amendment.

The Undersigned recognizes that John Hancock has cited to some other, non-binding, out-of-district cases to support its view that none of the claims here -- including the ones for damages under Sections 502(a)(2) and 409, to require Defendants to "make good" the losses and to "restore" profits which would have been made -- permit a jury trial. The Undersigned is not persuaded, especially because the result undermines the bedrock principle that federal courts favor jury trials.

For example, in *Pledger v. Reliance Trust Co.*, No. 15-cv-4444, 2017 WL 11568409 (N.D. Ga. Nov. 7, 2017), the trial judge granted the Defendants' motion to strike the jury trial demand in an ERISA case. In doing so, the trial judge, in analyzing the second prong of the two-step test (i.e., whether the remedy sought is legal or equitable in nature), followed and basically adopted in whole another district court's reasoning. Specifically, the *Pledger* Court concluded (by quoting extensively from *Perez v. Silva*, 185 F. Supp. 3d 698 (D. Md. 2016)) that the claim was "essentially" one for "breach of trust arising from a non-contractual, fiduciary duty." *Id.* at *4.

The *Perez* Court, which *Pledger* relies upon, found it legally significant that *Great-West* involved a claim "more akin to a breach of contract action," arising from a

contractual duty, instead of a fiduciary duty. *Perez*, 185 F. Supp. 3d at 703. Because the claim before it was "essentially a claim for breach of trust arising from a non-contractual, fiduciary duty," *Perez* concluded that the claim was equitable. *Id.*

But *Perez* cited no binding legal authority to support its view that the distinction between a claim "akin" to a breach of contract action and one for breach of fiduciary duty was legally significant for purposes of analyzing the nature of the remedy. *Id.* Instead, it relied solely on two non-binding trial-level decisions, one from Illinois and one from Kansas. *Id.*

*Perez* also concluded that the monetary remedy sought by the Secretary of Labor (who was the Plaintiff) is "comparable to a surcharge, which it said is a "trust remedy that is 'equitable in character and enforceable . . . in a court exercising equity powers." *Id.*

But *Meixner* rejected a similar surcharge argument, concluding that the party seeking to strike the jury trial demand did not demonstrate that compensatory damages titled as "surcharge" were "*typically* available in equity." 2007 WL 4225069, at *5.

Moreover, the Plaintiffs here did not describe their claims as remedies for a surcharge.

*Perez's* third reason for finding the remedy equitable in nature is that the so-called proposed surcharge "is only one of numerous remedies requested in the Secretary's prayer," and it noted that the presence of "*mainly* injunctive" relief in other prayers for relief meant that "taken *as a whole,* the relief requested is mainly injunctive in nature –

and there can be no question that injunctive relief is inherently equitable." 185 F. Supp. 3d at 704 (emphasis added).

But the mere fact that some or even most of the claims are equitable does not somehow render the remaining legal claims equitable. To be sure, Plaintiffs here are seeking equitable and declaratory relief, for which they are not entitled to a jury trial. But that reality does not convert the remedies for damages into equitable remedies.

The *Perez* approach -- a *de facto* weighing of the claims to see whether the equitable remedies outweigh the legal ones, and if so, then all claims are designated to be of the more-numerous type -- is not supported by Supreme Court precedent. *See Ross v. Bernhard*, 396 U.S. 531 (1970) (finding that when legal and equitable claims are joined in the same action, there is a right to a jury trial on the legal claims); *Chauffeurs, Teamsters and Helpers*, 494 U.S. at 559 (noting that the action against the Union encompasses **both** equitable and legal issues and holding that the remedy for backpay sought in the duty of fair representation action is legal in nature); *see also Continental Vineyard LLC*, 2018 WL 11195945 (seeking both legal and equitable remedies and finding that jury's decision on liability would bind the Court across all claims, regardless of whether they are legal ones seeking damages or those seeking equitable relief); *Kirse*, 2005 WL 6797091, at *3 (finding that request for equitable remedies of prejudgment interest and rescission do not eliminate jury trial right for breach of fiduciary duty); *Hellman*, 2013 WL 4482889, at *5

21

(finding that other claims for equitable remedies do not affect determination that a jury trial right exists on legal claims, such as restitution at law).

*Perez's* final ground in its second-prong analysis is that the "clear weight of authority" in cases decided after *Great-West* is that Section 502(a)(2) claims do not implicate the Seventh Amendment's jury trial guarantee. 185 F. Supp. 3d at 704-05. The "clear weight of authority" is a string cite of nine mostly unpublished, non-binding district court opinions.

But *Perez* does not mention, let alone discuss, *Montanile*, 577 U.S. 136, even though it was decided approximately four months earlier. In *Montanile*, the Supreme Court, in footnote 3 (discussed earlier in this Order), noted that *Great-West's* interpretation of equitable relief remains unchanged. *Great-West's* interpretation of equitable relief is that "traditionally speaking, relief that sought a lien or a **constructive trust, was legal relief**, not equitable relief, unless the funds in question were 'particular funds or property in the defendant's possession.'" *Montanile*, 577 U.S. at 148 n.3 (emphasis added); *see also Amara*, 563 U.S. at 439 (describing *Great-West*).

The Complaint here seeks "imposition of a Constructive Trust on any amounts by which Defendant was unjustly enriched at the expense of the Plan as the result of breaches of fiduciary duty or violations of ERISA." [ECF No. 1, p. 16]. There is no suggestion that there are any specific funds still in Defendant's possession. Therefore,

*Great-West*, the vitality of which was recently ratified in the *Montanile* footnote, supports Plaintiff's jury trial argument for the legal claim.

In addition, the prayer for relief here also asks for an "order compelling Defendant to make good to the Plan all losses to the Plan resulting from defendant's breaches of fiduciary duty and violations of ERISA." [ECF No. 1, p. 16]. John Hancock has not persuaded me that this type of remedy is an equitable one.

Finally, even if the "great weight" of authority supports an Order striking the jury trial demand, none of that authority is binding. Thus, there is no legal impediment to an Order following the minority view. Given that the Eleventh Circuit has not issued a binding ruling, one group of district court cases is, technically speaking, just as non-binding as another set. *See Lang v. Reedy Creek Improvement Dist.*, 888 F. Supp. 1143, 1147 n.6 (M.D. Fla. 1995) (citing *Fox v. Acadia State Bank*, 937 F.2d 1566 (11th Cir.1991)) ("A district court is not bound by another district court's decision, nor by the opinion of another judge of the same district."). Four comprehensive, well-written and legally insightful district court opinions can be more persuasive than ten largely-conclusory, follow-the-first ruling opinions. And there is no law branding a non-binding district court opinion in the circuit to automatically and necessarily be any more persuasive than one from outside the circuit. In the instant case, the Undersigned relied on, among other authorities, a district court case in our Eleventh Circuit (*Meixner*, 2007 WL 4225069) but did not find two other in-Circuit trial court rulings (*Geronemus*, 2010 WL 11549886;

*Pledger*, 2017 WL 11568409) to be persuasive. As noted, *Geronemus* did not discuss the two-prong analysis and *Pledger* merely parroted *Perez*, which the Undersigned discussed above.

For the reasons outlined extensively above, the Undersigned concludes that the apparent minority rule is the more logical approach, especially when factoring in the historic and significant federal interest in jury trial resolution of disputes (compared to non-jury trials).

Having concluded that Plaintiffs are entitled to a jury trial on their legal, non-equitable claims under ERISA Sections 502(a)(2) and 409, the Undersigned (which has this case on consent) will arrange for the jury to determine questions of liability on the breach of fiduciary duty claim, and I will be bound by that liability finding across all of Plaintiff's claims, regardless of whether they seek damages or equitable relief. *See generally Continental Vineyard LLC.*, 2018 WL 11195945; *cf. Hellman*, 2013 WL 4482889, at *5 (finding that the existence of other claims seeking equitable remedies does not affect determination that jury trial right exists in class action ERISA lawsuit seeking an order compelling defendants to make the plan whole and requiring defendants to restore profits that participants would have made if defendants had not breached their duties).

III.   **Conclusion**

For the reasons discussed above, the Undersigned **denies** John Hancock's motion

to strike jury trial demand.

**DONE AND ORDERED** in Chambers, in Miami, Florida, on March 12, 2021.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to:**
All Counsel of Record