UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 19-21147-CIV-GOODMAN
[CONSENT CASE]

ERIC ROMANO, et al.,

    Plaintiffs,

v.

JOHN HANCOCK LIFE INS. CO. (USA),

    Defendant.

_____/

**ORDER ON DEFENDANT'S MOTION TO FILE A THIRD-PARTY COMPLAINT
AND AN AMENDED ANSWER AND COUNTERCLAIM**

*"Defer no time, delays have dangerous ends."*

- William Shakespeare (from Henry VI, Part 1/ Act III/ Scene II)

Plaintiffs Eric and Todd Romano, trustees of an ERISA defined contribution plan ("the Romanos" or "Plaintiffs"), filed a two-count lawsuit against Defendant John Hancock Life Ins. Co. (USA), which sold them, as trustees of a 401(k) Plan, a Group Variable Annuity Contract. [ECF No. 1, (the "Complaint" or "Compl.")]. Plaintiffs sued on behalf of a putative class of persons who owned variable annuity contracts from John Hancock.

John Hancock filed [ECF No. 89] a motion for leave (1) to file a third-party complaint adding Christian Searcy, Jr. as a third-party defendant, and (2) to amend its

answer and file counterclaims against Plaintiffs Eric and Todd Romano. Plaintiffs filed [ECF No. 107] an opposition response, John Hancock filed [ECF No. 112] a reply and the Court held a two-and-a-half-hour Zoom hearing [ECF No. 128].

For the reasons outlined below, the Undersigned **denies** the motion. At bottom, though, the rationale underlying this ruling is practicality and judicial efficiency. Granting the motion would result in the need to reopen discovery, substantially amend the Trial Scheduling Order, and continue the trial and other trial-related deadlines. John Hancock says that it waited to file the motion because it only recently learned of the grounds to support its proposed contribution claims. But the record evidence reveals that John Hancock knew the alleged facts underlying its contribution claims months, and probably more than a year before it took the depositions which it now says provided the basis for the proposed claims.

In other words, John Hancock's motion is a dilatory filing. Granting the requested relief would generate undue delay and prejudice. And adopting John Hancock's suggestion to hold the motion in abeyance until *after* the trial (in order to keep the current discovery and trial deadlines intact) would negatively impact the Undersigned's schedule and efficiency, as I would need to preside over a second trial involving many of the facts involved in the first trial. The abatement scenario would also impact the parties, as they would need to take additional discovery, retain experts and rebuttal experts, and prepare again for a trial covering many of the issues they and their attorneys prepared

for in the first trial.

I. **Factual and Procedural Background**

Plaintiffs Eric Romano and Todd Romano are trustees of the Romano Law, PL 401k Plan (the "Plan"). [ECF No. 1, ¶ 1]. The Plan is a defined contribution plan under ERISA, which allows participating employees to invest in options made available by the plan trustees. *Id*. at ¶ 11. Through their financial advisor, Plaintiffs purchased a group variable annuity contract (the "Contract") from John Hancock to make recordkeeping services and investments available for Plan participants. *Id*. at ¶ 1.

Plaintiffs' Complaint asserts two claims against John Hancock relating to tax credits attendant to investments that Plaintiffs chose for their Plan under the Contract that "invest in stocks and securities of foreign companies." *Id*. at ¶ 30 (defining these as "International Investment Options"). In Count I, Plaintiffs allege John Hancock breached the ERISA fiduciary duty of loyalty by receiving and retaining "Plan Foreign Tax Credits" with respect to the International Investment Options, resulting in an alleged reduction in the value of the Plan's assets. *Id*. at ¶¶ 60-66. In Count II, Plaintiffs allege that John Hancock caused the Plan to enter into an ERISA prohibited transaction by not crediting their Plan with the value of Foreign Tax Credits ("FTCs"). *Id*. at ¶¶ 67-73.

Plaintiffs have sued on behalf of a putative class of "all trustees, sponsors and administrators of all 'employee benefit plans' under ERISA, 29 U.S.C. § 1002(1), that owned variable annuity contracts from" John Hancock. *Id*. at ¶ 46. Under both Count I

3

and Count II, Plaintiffs seek equitable relief under ERISA against John Hancock. *Id*. at ¶¶ 65-66, 72-73.

In Count I, Plaintiffs allege John Hancock is "liable to personally make good to the Plan any losses to the Plan resulting from each breach under 29 U.S.C. § 502(a)(2)." *Id.* at ¶ 65. Similarly, in Count II, Plaintiffs seek the same relief, alleging John Hancock is "liable to personally make good to the Plan any losses to the Plan resulting from these prohibited transactions under 29 U.S.C. § 502(a)(2)." *Id*. at ¶ 72. Plaintiffs further allege in both Count I and Count II that "[p]ursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), the Court should award equitable relief to the Class." *Id*. at ¶¶ 66, 73.

Plaintiffs also seek relief in the form of a declaratory judgment that John Hancock breached fiduciary duties and violated ERISA; a constructive trust on amounts that result from the alleged breaches; an injunction against further breaches and violations; and equitable restitution and other equitable relief. *Id*. at pp. 15-16.

John Hancock filed a motion for leave, seeking to add Searcy and pursue a counterclaim against the Romanos. The applicable trial scheduling order imposes a July 26, 2021 deadline for joining additional parties and to amend pleadings. The motion was filed on July 21, 2021.

II. **The Parties' Contentions**

John Hancock's Position

John Hancock notes that Plaintiffs challenge the FTCs which John Hancock used

in its corporate tax filings in connection with foreign taxes paid by mutual funds owned by John Hancock in the Separate Accounts used as funding vehicles for the Plan. It says that it was Plaintiffs themselves who selected John Hancock's Separate Accounts as the Plan's funding mechanism. And it emphasizes that it was Plaintiffs who chose the specific sub-accounts within the Separate Accounts that held mutual funds that allowed John Hancock to treat foreign taxes as though they were paid by John Hancock.

John Hancock contends that discovery has revealed that this was all known to Plaintiffs' investment advisor, Searcy, when he advised Plaintiffs to select those very sub-accounts for the Plan. Searcy understood how foreign taxes were treated under the Internal Revenue Code and knew that John Hancock did not advertise or otherwise communicate that it would apply credits on account of FTCs at the time he presented John Hancock's proposal to Plaintiffs.

Thus, John Hancock says, it was Searcy and Plaintiffs who began the causal chain that led to the damages alleged in this case. According to John Hancock's motion and supporting memoranda, Searcy knew full-well the impact of his advice, and Plaintiffs independently were imprudent by not informing themselves of issues that they now claim were relevant to their actions. To the extent that the Plan incurred any harm by the Internal Revenue Code allowing FTCs to be used by John Hancock in the way Plaintiffs allege in their Complaint -- which John Hancock continues to deny -- Plaintiffs themselves and Searcy should be liable. Accordingly, John Hancock argues, the Court

should allow it to file the Third-Party Complaint and Amended Answer and Counterclaim against Searcy and Plaintiffs (which they submitted as an exhibit) so that their liability can be determined.

John Hancock also raises the following arguments: (1) it has valid contribution claims against Searcy and the Romanos (i.e., the contribution claims are not futile); (2) it has not unreasonably delayed in bringing the motion for leave; (3) the relief it seeks will not create delay nor unduly complicate this lawsuit; and (4) neither Searcy nor the Romanos would be unduly prejudiced by an Order granting the motion.

In its Reply [ECF No. 112, p. 6], John Hancock argued that no further discovery would be needed by Searcy or the Romanos for the contribution claims if they were permitted. It did not explain *why* additional discovery should not be permitted in connection with two new claims and a new party. But it provided an alternative if the Court permitted additional discovery concerning contribution: An Order staying consideration of the motion "until any such time as liability and damages are established." *Id.* In fact, John Hancock explained that its alternative "could be the most efficient means to address the questions without sacrificing the current schedule." [ECF No. 112, p. 6].

Following up on that point, John Hancock then provided its view of one scenario:

> Indeed, should Plaintiffs be unable to prove that they have standing to assert their claims or are otherwise unable to demonstrate the elements of their underlying claims against John Hancock, and no liability or damages are found, then the Court would dismiss any contribution claims as moot.

6

> Therefore, judicial efficiency might counsel in favor of staying any potential contribution claims at this juncture. (emphasis added).

*Id.*

At the hearing, John Hancock advised that it was changing its classification of the of the stay suggestion from an alternative to its *preferred* outcome.

<u>Plaintiffs' Position</u>

Plaintiffs' position is easy to summarize: they say the motion is futile, untimely, and unduly prejudicial.

As a threshold matter, they note that "the law is far from settled on whether ERISA permits a breaching fiduciary like Hancock to seek contribution from other fiduciaries." [ECF No. 107, p. 1]. Plaintiffs note that there is a circuit split on the question, with two circuits holding that contribution claims are permissible, two circuits holding to the contrary, and the Eleventh Circuit having yet to take a side.

[John Hancock agrees that there is a circuit split and that our appellate court has not yet expressly ruled. Not surprisingly, each side argues that the two circuits which favor its position have issued rulings adopting the "better-reasoned" approach.].

Plaintiffs contend that John Hancock knew of the facts underlying its proposed contribution claims months, if not more than a year, before its just-under-the-deadline motion for leave to amend. Arguing that John Hancock has no valid

7

excuse for its lack of diligence, Plaintiffs contend that an Order granting the motion would require significant modifications to the current schedule.

In addition, Plaintiffs assert other purported flaws in the proposed contribution claims: (1) John Hancock did not adequately plead that Plaintiffs and/or Searcy bear more culpability than John Hancock; and (2) it is John Hancock, not Plaintiffs or Searcy, who exclusively benefited from its violations of ERISA's fiduciary duties.

### III. <u>Applicable Legal Principles and Analysis</u>

Although different Rules of Civil Procedure govern requests to file a third-party complaint and requests for leave to file an amended answer and counterclaim, the applicable standards, and factors to consider are similar.

Rule 14(a) "controls the joinder of a third-party defendant and the filing of third-party claims," *Daselina Invs. Ltd. v. Finskiy*, No. 19-24038-CIV, 2020 WL 5514198, at *1 (S.D. Fla. June 15, 2020), while Rule 15(a) controls the filing of an amended answer and counterclaim, *see* Fed. R. Civ. P. 15(a).

> Factors appropriately considered in deciding a motion to implead a new party as a third-party defendant include whether (1) the movant deliberately delayed or was **derelict** in filing the motion, (2) impleading would unduly **delay or complicate** the trial, (3) impleading would **prejudice** the third-party defendant, and (4) the third-party complaint states a claim upon which relief can be granted.

*Van Voorhis v. Hillsborough Bd. of Cty. Commissioners*, No. 8:06-CV-1171-T-TBM, 2008WL 11440528, at *1 (M.D. Fla. Mar. 25, 2008) (emphasis added).

Likewise, a court should not permit an amendment "(1) where there has been **undue delay**, bad faith, **dilatory** motive, or repeated failure to cure deficiencies by amendments previously allowed; (2) where allowing amendment would cause **undue prejudice** to the opposing party; or (3) where amendment would be futile." *Myrthil v. Schade*, No. 18-cv-60009, 2019 WL 655317, at *1 (S.D. Fla. Feb. 18, 2019) (citing *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001)).

According to the Eighth and Ninth Circuits, a claim for contribution is unavailable under ERISA. *See Travelers Cas. & Sur. Co. of Am. v. IADA Servs., Inc.*, 497 F.3d 862, 864 (8th Cir. 2007) ("We conclude that there is no right of contribution under ERISA."); *Kim v. Fujikawa*, 871 F.2d 1427, 1432 (9th Cir. 1989) (holding that ERISA "cannot be read as providing for an equitable remedy of contribution in favor of a breaching fiduciary").

On the other hand, the Second and Seventh Circuits have reached the opposite conclusion. *See Chemung Canal Tr. Co. v. Sovran Bank/Maryland*, 939 F.2d 12, 16 (2d Cir. 1991); *Free v. Briody*, 732 F.2d 1331, 1337 (7th Cir. 1984).

And district courts, both within this Circuit and across the country, are split on the issue. *Compare Loo v. Cajun Operating Co.*, 130 F. Supp. 3d 1097, 1110 (E.D. Mich. 2015) (holding that no right of contribution exists); *Charters v. John Hancock Life Ins. Co.*, 583 F. Supp. 2d 189, 195 (D. Mass. 2008) (same); *Hollingshead v. Burford Equip. Co.*, 747 F. Supp. 1421, 1445 (M.D. Ala. 1990) (same), *with Mueller v. Rodin*, No. 20-23388-CIV, 2021 WL 2592394, at *3 (S.D. Fla. Feb. 22, 2021) (recognizing right of contribution); *Guididas v. Cmty.*

*Nat. Bank Corp.*, No. 8:11-CV-2545-T-30TBM, 2012 WL 5974984, at *5 (M.D. Fla. Nov. 5, 2012) (same).

If John Hancock's proposed contribution claims were permitted, then the Undersigned would be compelled to provide the opportunity for additional discovery, especially for Searcy, who is not a party to the lawsuit. Similarly, the Undersigned would also need to provide additional time for the parties to retain experts and rebuttal experts on the duties of prudence and care. *Henderson v. FedEx Exp.*, No. CIVA 5:09-CV-85(CAR), 2009 WL 1951059, at *6 (M.D. Ga. July 6, 2009) (denying motion to join additional parties where "the case has progressed to an advance stage, discovery is nearly complete, and the **amendment would require additional extensive discovery.**" (emphasis added)).

District courts are given "broad discretion over the management of pretrial activities, including discovery and scheduling." *Johnson v. Bd. of Regents of Univ. of Ga.*, 263 F.3d 1234, 1269 (11th Cir. 2001).

The Undersigned rejects John Hancock's suggestion that the Third-Party Complaint and Counterclaims should be permitted without giving the new defendants the opportunity to engage in discovery. John Hancock has not cited any convincing case law to support its position that "neither Plaintiffs nor Searcy need additional discovery as to John Hancock's contribution claims." [ECF No. 112, p. 6]. It would be fundamentally unfair to permit a Third-Party Complaint against Searcy, who would be added as a new party, yet deny him any opportunity to take discovery or retain expert witnesses. *Cf.*

*Morgan v. Gandalf*, 165 F. App'x 425 (6th Cir. 2006) (holding trial court abused its discretion in refusing to allow the plaintiff additional discovery after permitting the defendant to amend its answer raising additional affirmative defenses); *Beaver v. Tarsadia Hotels*, 315 F.R.D. 346, 350 (S.D. Cal. 2016) ("Based on the reasoning behind Rule 14 to allow third party defendants to participate in the main action in order to protect them against a decision of liability against the defendant to the plaintiff, which the Court believes would also include the amount of damages, the Court concludes that [the third-party defendant] should be allowed to participate in the defense of this action on an ongoing basis and be allowed to conduct expert discovery if class certification is granted.")

Under the current Trial Scheduling Order, the parties had until July 26, 2021 to join additional parties and amend pleadings. [ECF No. 48]. John Hancock filed its motion on July 21, 2021. The fact discovery deadline was August 9, 2021, while August 16, 2021 was the deadline to disclose witnesses, including expert witnesses. August 23, 2021 was the deadline for producing expert reports and September 14, 2021 was the deadline for completing all initial expert discovery. The trial is specially set to start on March 7, 2022.

Therefore, the deadline to complete fact discovery has already expired, as have the deadlines for initial expert discovery.

John Hancock says in its Reply [ECF No. 112, p. 2] that it decided to begin discovery with the parties to the case, "rather than beginning its discovery by seeking

11

information from a non-party" (i.e., Searcy). But John Hancock does not explain why it could not have pursued discovery against *both* Searcy and the Romanos.

John Hancock's justification for its last-minute motion is that it only recently took the depositions of Plaintiffs and Searcy in June and July 2021. [ECF No. 90, at p. 8]. Although this explanation is correct insofar as it accurately describes when those depositions occurred, it is not convincing. The case has been pending for more than two years, and John Hancock knew the facts supporting its proposed contribution claims for many months, and in some cases more than a year, before it took these depositions.

Even though John Hancock identified Searcy as an individual with "knowledge of representations made and communications concerning the plan" in its initial disclosures dated May 8, 2019, it waited until November 30, 2020 to first serve a subpoena for records on UBS, Searcy's former employer. It then obtained records from UBS no later than February 24, 2021, approximately seven months before it filed its motion.

The records from UBS, some of which John Hancock cites as Exhibits 10-13 to its motion, as well as the Investment Committee Minutes, which Plaintiffs produced in January of 2020, form the basis of the proposed allegations against Searcy and Plaintiffs. [ECF No. 91, ¶¶ 7, 11-14.] John Hancock had these documents at least seven months before it filed its motion, so it cannot demonstrate that its motion is timely.

After the hearing, and in response to a Court-issued directive, John Hancock provided [ECF No. 131] a fact-specific, date-specific notice about when it received certain

documents and information to support the proposed contribution claims at issue in the pending motion. That notice confirms that it had ample information to support its contribution claims before the depositions it took in June and July 2021. In fact, much of the documentation was received in January 2020, long before the depositions in the Summer of 2021. This is the disclosure John Hancock made:

> 1. By September 23, 2021, Defendant shall file on CM/ECF a notice answering the following question: When did Defendant receive the following: (a) the documents marked as Exhibits 9-11 of the Declaration of Demario Carswell submitted in support of Defendant's motion for leave to amend [ECF No. 91]; (b) the investment committee meeting minutes referenced in paragraph 37 of the proposed third-party complaint [ECF No. 89-1]; and (c) the information that supports paragraph 50 of the proposed third-party complaint [ECF No. 89-1].

(a) The documents identified as Exhibits 9-11 were received as follows:

| Document | Date Received | Source |
|---|---|---|
| Exhibit 9 | February 2, 2021 | Third-Party Production (UBS) |
| Exhibit 10 | February 2, 2021 | Third-Party Production (UBS) |
| Exhibit 11 | February 2, 2021 | Third-Party Production (UBS) |

(b) The investment committee meeting minutes referenced in paragraph 37 were received as follows:

| Document | Date Received | Source |
|---|---|---|
| November 5, 2015 Minutes | January 10, 2020 | Plaintiffs |
| January 19, 2017 Minutes | January 10, 2020 | Plaintiffs |
| April 18, 2017 Minutes | February 12, 2021 | Third-Party Production (UBS) |
| May 11, 2017 Minutes | January 10, 2020 | Plaintiffs |
| August 14, 2017 Minutes | January 10, 2020 | Plaintiffs |
| November 1, 2017 Minutes | January 10, 2020 | Plaintiffs |
| March 12, 2018 Minutes | June 30, 2020 | Plaintiffs |
| May 7, 2018 Minutes | January 10, 2020 | Plaintiffs |
| August 2, 2018 Minutes | January 10, 2020 | Plaintiffs |
| October 29, 2018 Minutes | January 10, 2020 | Plaintiffs |
| February 13, 2019 Minutes | January 10, 2020 | Plaintiffs |
| May 20, 2019 Minutes | June 30, 2020 | Plaintiffs |
| August 10, 2020 Minutes | October 16, 2020 | Third-Party Production (Christian Searcy, Jr.) |
| November 19, 2020 Minutes | January 21, 2021 | Third-Party Production (Christian Searcy, Jr.) |

(c) The documentary information that supports paragraph 50 of ECF No. 89-1 was received on February 2, 2021, and the testimonial information that supports paragraph 50 of ECF No. 89-1 was received on June 22, 2021.

The mere fact that John Hancock obtained deposition testimony in June or July 2021 hardly means that these dates are when it first had the information to pursue

contribution claims. To the contrary, as the chart above demonstrates, most of the information was provided well before the depositions.

Moreover, the mere fact that the motion was filed five days before the July 26, 2021 deadline to join additional parties and amend the pleadings set forth in the Scheduling Order [ECF No. 48] does not mean that leave should necessarily be provided. *See Gulf Coast Visuals Mgmt. Co., LLC v. Wedelstedt*, No. 2:17-CV-121-TMP, 2018 WL 1244497, at *3 (N.D. Ala. Mar. 9, 2018) (explaining that the deadline in the scheduling order "establishes an outside limit" and noting that "amendments sought within the deadline [of the scheduling order] still must meet the requirements of Rule 15(a)."); *see also Vulcan Mktg., Inc. v. Tech. Consumer Prod., Inc.*, 597 F. Supp. 2d 1266, 1268 (N.D. Ala. 2009) ("This court has never entered a scheduling order that purported to grant leave in advance to file willy nilly amendments or counterclaims presenting new issues up until the deadline for pleadings."), *amended on denial of reconsideration*, 614 F. Supp. 2d 1253 (N.D. Ala. 2009).

At a minimum, if John Hancock's proposed amendments were permitted, all remaining deadlines in the case schedule would need to be modified to allow Searcy and Plaintiffs to conduct fact and expert discovery to respond to the newly-asserted claims.

To be sure, Searcy was represented by one of the firms representing Plaintiffs in this litigation, but this representation was limited, concerning the service of a subpoena on a non-party under Federal Rule of Civil Procedure 45. The Undersigned is at a loss to

15

see how this modest involvement would deprive Searcy of the same rights that any other party to litigation would have to defend itself and conduct discovery.

If joined as a party, Searcy should be permitted, for example, to seek documents from John Hancock concerning its communications with investment advisors.

Moreover, the focus of Searcy's document requests may not overlap with those of Plaintiffs, who sought documents from a limited number of John Hancock custodians. Searcy may reasonably seek documents from different John Hancock employees and different departments and with different search terms.

In addition, Searcy would be entitled to present expert testimony to respond to John Hancock's claims, but it would be impossible to meet the now-expired August 16, 2021 deadline to provide a list of all witnesses, including experts, and the August 23, 2021 deadline to provide initial expert reports.

John Hancock's arguments about Searcy's involvement implicitly assumes that he would necessarily be represented at trial by Plaintiffs' current counsel if this Court permitted Searcy to be added as a Third-Party Defendant. But this assumption is speculative and might prove incorrect. The Undersigned can envision strategic reasons why Searcy might want to have his own attorney to represent him as a Third-Party Defendant. Similarly, the Undersigned can also appreciate why Plaintiffs' counsel might

16

not want to represent Searcy as a Third-Party Defendant in front of a jury while simultaneously representing the Romanos as Plaintiffs.

Likewise, if John Hancock were permitted to challenge the prudence and care of Plaintiffs in serving as trustees to the Plan, Plaintiffs would be entitled to seek additional discovery from John Hancock regarding, among other things, its disclosures regarding the selection of investment options and the performance of various investment options. Additionally, as noted, Plaintiffs would need additional time to retain experts and prepare expert reports on the duties of prudence and care.

The significant modifications to the case schedule that John Hancock's proposed claims would require warrant denying its motion. *See Maynard v. Bd. Of Regents of Div. of Universities of Fla. Dep't of Educ. ex rel. Univ. of S. Fla.*, 342 F.3d 1281, 1287 (11th Cir. 2003). In *Maynard*, the Eleventh Circuit affirmed a district court's denial of a request to amend a complaint "on the last day of the already extended discovery period," because the amendment "would have produced more attempts at discovery, delayed disposition of the case, and likely prejudiced [the opposing party]," and there was "no good reason why [the movant] could not have made the motion earlier." *Id.*

District courts routinely deny delayed motions to amend or to add third parties on these grounds. *See, e.g.*, *Great Am. Ins. Co. v. Mueller*, No. 8:19-CV-3170-T-60JSS, 2020 WL 9670614, at *1-2 (M.D. Fla. Nov. 2, 2020) (denying the defendant's request to file a

third-party complaint to add new parties because doing so "would delay or unduly complicate the action, resulting in prejudice to [the plaintiff]"); *Helferich Pat. Licensing, LLC v. Legacy Partners, LLC*, 917 F. Supp. 2d 985, 989 (D. Ariz. 2013) (noting that the defendant had notice of the nature of its proposed third-party claims for many months but delayed in filing its motion and denying motion to add third-party defendants even though a trial date had not been set because "[t]he Scheduling Order set a number of deadlines with which it will become impossible for the parties to comply if third-party defendants are added at this stage, which will necessarily delay the trial"); *Henderson v. FedEx Exp.*, No. CIVA 5:09-CV-85(CAR), 2009 WL 1951059, at *6 (M.D. Ga. July 6, 2009) (denying motion to join additional parties where "the case has progressed to an advance [sic] stage, discovery is nearly complete, and the amendment would require additional extensive discovery"); *Hartford Ins. Co. v. BellSouth Telecomms., Inc.*, No. 04-20532-CIV, 2005 WL 8155606, at *2 (S.D. Fla. July 5, 2005) (denying motion to file a fourth party complaint and add another defendant because party "inexcusably waited an additional seven weeks before actually filing its Motion," which "resulted in both the discovery deadline and the motion deadline expiring" before the briefing on the motion was complete).

**IV.   Conclusion**

For the reasons discussed above, the Undersigned **denies** John Hancock's motion for leave.

Given this ruling, which is based on delay and undue prejudice, there is no need to grapple with the thorny issue of whether the proposed contribution claims would be futile. Phrased differently, there is no need to dig deep into the legal weeds and determine whether a contribution claim is permissible in the Eleventh Circuit in an ERISA lawsuit. *Cf. Asher v. Unarco Material Handling, Inc.*, No. 6:06-548, 2007 WL 2463326, at *3 (E.D. Ky. Aug. 28, 2007) (denying proposed third-party action because it would unduly prejudice the plaintiffs and explaining that the proposed claims "would be more appropriately pursued in a separate action for indemnity").

Therefore, assuming *arguendo* that contribution claims are permitted (which is simply a hypothetical assumption, not a clue about my leanings, if any, on the issue), the Court would *still* deny the motion on the other grounds (i.e., undue prejudice and a dilatory submission of the motion for leave). *See generally Maynard*, 342 F.3d at 1287 (11th Cir. 2003) (finding district court did not abuse its discretion in denying a plaintiff leave to amend his complaint on the last day of an extended discovery period because it "would have produced more attempts at discovery, delayed disposition of the case, and likely prejudiced" the defendant, and there was no good reason why the plaintiff could not have made the motion earlier); *Vapco, Inc. v. Perfecta Products, Inc.*, No. 10-cv-399, 2011 WL

13176236, at *1 (M.D. Fla. Feb. 10, 2011) (in denying current motion to amend, discussing how prior amendments necessitated extending discovery to avoid prejudice to a party); *Yellow Pages Photos, Inc. v. Yellow Book USA*, Inc. No.08-cv-930, 2009 WL 10670233 (M.D. Fla. Aug 14, 2009) (denying motion for leave to amend because, despite one month being left in discovery schedule, amendment would have prejudiced opposing party by only allowing a limited time for discovery); *see also Hartford Ins.,* 2005 WL 8155606, at *2 (granting motion would unduly delay proceedings because, if leave were granted, the newly-added parties "would be entitled to move to dismiss the impleader, depose parties and witnesses, and propound interrogatories and **seek discovery.**" (emphasis added)).

**DONE AND ORDERED** in Chambers, in Miami, Florida, on September 28, 2021.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to:**
All Counsel of Record