UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 19-21147-CIV-GOODMAN
[CONSENT CASE]

ERIC ROMANO, et al.,

    Plaintiffs,

v.

JOHN HANCOCK LIFE INS. COMPANY (U.S.A.),

    Defendant.

_____/

**ORDER CERTIFYING CLASS BEGINNING MARCH 25, 2013**

The Undersigned previously entered an Under-Seal Order Granting Plaintiffs' Motion for Class Certification. [ECF No. 295].[1] In that Order, the Undersigned left open the question of whether Plaintiffs have standing to represent the Proposed Class for the 18.5-month period from March 25, 2013 through October 7, 2014 (the date Plaintiffs entered into the contract with John Hancock). Because the parties could not agree on the timeframe of the class period, at the Undersigned's direction, each side submitted a memorandum of law on the appropriate start-date for the Proposed Class. [ECF Nos. 301;

---

[1]  Unlike the Order Granting Plaintiffs' class certification motion, this Order does not contain information which the parties have designated as confidential and there is nothing in the Order compelling under-seal status. Therefore, I am filing this Order publicly on CM/ECF.

302]. Having reviewed Plaintiffs' and John Hancock's class certification submissions and the supplemental memoranda submitted by each side, the Undersigned **grants** Plaintiffs' request and certifies the Proposed Class **beginning March 25, 2013.**

In Defendant's response to Plaintiffs' Motion to Certify Class, it argued, under its "Plaintiffs lack standing to seek all the relief sought in the Complaint" subsection, that because "the Contract did not become effective until October 7, 2014 . . . [Plaintiffs] have no standing with respect to any conduct of John Hancock from the beginning of the Proposed Class period, March 25, 2013, until October 7, 2014, and cannot represent the Proposed Class as to those eighteen and a half months." [ECF No. 109, p. 24]. Defendant made no additional argument on this point. Thus, Defendant's argument in its response was premised exclusively on the fact that Plaintiffs' contract with John Hancock did not become effective until October 7, 2014.

However, Defendant's more-recent memorandum in support of this position, submitted at the Court's direction, elaborated on that argument and added entirely new arguments on commonality and the applicable statute of limitations, which were absent from its initial response. Plaintiffs' memorandum, which was due on the same day as Defendant's memorandum, addressed the issue only as raised in Defendant's class certification response.

Before addressing the parties' arguments, the Undersigned will summarize the principles underlying my reasoning for ruling in Plaintiffs' favor on Article III standing,

typicality, and commonality:

> (1) Standing: Plaintiffs' allegations that Hancock improperly kept Foreign Tax Credits create an Article III injury;
>
> (2) Typicality: Plaintiffs' claims and those of other class members arise from the same type of event and are based on the same legal theory -- i.e., John Hancock breached its fiduciary duty by keeping more than $100 million in Foreign Tax Credits; and
>
> (3) Commonality: Plaintiffs' description of common questions of law and fact are (1) whether John Hancock was a fiduciary of the Plans with respect to Plaintiffs' claims; (2) whether John Hancock disclosed its receipt and retention of Foreign Tax Credits; (3) whether John Hancock breached its fiduciary duties; and (4) whether John Hancock engaged in prohibited transactions. Defendant's proposed defenses, which will be common amongst the class, are: (1) "no member of the class" suffered redressable injury; (2) it is not a fiduciary; and (3) Foreign Tax Credits are not compensation.

[ECF No. 295].

In support of Defendant's contention that Plaintiffs' claims are atypical of class members who had plans with John Hancock between March 25, 2013 and October 7, 2014, Defendant cites *Bryant v. Wal-Mart Stores, Inc.*, No. 16-24818, 2020 WL 4333452, at *10 (S.D. Fla. July 15, 2020). However, the ruling on atypicality in *Bryant* is inapplicable here because the plaintiffs in *Bryant* sought to represent a subclass of plaintiffs for which they did not qualify -- not, as here, class members who suffered similar injuries at a different time than the class representative. Moreover, the analysis in *Bryant* largely focused on a lack of standing injury, and that extensive assessment was made on a Plaintiff-by-Plaintiff basis. The typicality discussion there was limited to three sentences. *Id.* at *18.

The cases cited by Plaintiffs on this issue are more factually similar and applicable to the instant situation.

In *Piazza v. Ebsco Indus., Inc.*, the Eleventh Circuit approved certification of a class of plan participants from 1983 through 2001 even though the named plaintiff was a plan participant from only 1988 through 1996. 273 F.3d 1341 (11th Cir. 2001). The *Piazza* Court elaborated its holding in the context of typicality, stating "a strong similarity of legal theories will satisfy the typicality requirement despite substantial factual differences." *Id.* at 1351. The Court held that Plaintiff and putative class representative Piazza, who "only has standing to assert this breach of fiduciary duty claim for the period of his participation in the Plan," may "still represent the class if his claim has the requisite *typicality*." *Id.* (emphasis in original).

Emphasizing that all putative class members need not "share identical claims," the *Piazza* Court held that "the essential core" of Piazza's claims and those of other class members **in different years** "does not vary," which means that the factual differences between their claims and his are no barrier to allowing him to serve as class representative. *Id.*

Likewise, in *Fox v. Ritz-Carlton Hotel Co., L.L.C.*, the named plaintiff, who ate at only three Ritz-Carlton restaurants, was competent to represent a class of plaintiffs who dined at 94 different restaurants over a four-year period because, although the injuries may have occurred on different days at different restaurants, those differences do not

4

change the similar economic injury -- being charged an illegal automatic gratuity -- the plaintiff and the class members all suffered. 977 F.3d 1039, 1047 (11th Cir. 2020) (explaining that Defendant Ritz-Carlton and the district court "mix up" the class representative standing inquiry and "conflate the requirements of individual standing with those for a class representative"); *see generally Mills v. Foremost Ins. Co.*, 511 F.3d 1300, 1307 (11th Cir. 2008) ("[W]e stress that the fact that the Millses have standing as putative class representatives is an issue *distinct* from whether they qualify under Rule 23 to represent the class." (emphasis added)).

Defendant's next argument, raised for the first time in its recent memorandum, is that Plaintiffs do not meet the commonality prong for class certification because they did not attach any group annuity contracts or 408(b)(2)[2] disclosures predating October 7, 2014. Although this argument was not properly preserved, which would serve as an independent basis to not consider it, the Undersigned will nevertheless, in an abundance of caution, address the argument on its merits.

Defendant claims that Plaintiffs argued, in support of commonality, that "in John Hancock's 'contracts with plans, as well as supplemental disclosure forms . . . [John] Hancock represents that it will 'apply the total revenue received from underlying funds

---

[2] The reference to 408(b)(2) (technically, 29 C.F.R. § 408(b)(2)) concerns a Department of Labor-promulgated regulation applicable to ERISA, and it requires disclosure from covered service providers (like John Hancock) about their services and fees to the plan's fiduciaries.

5

and the sub accounts (i.e., 'Total Revenue used towards Plan Cost') to offset the cost of Recordkeeping Services provided under your Contract." [ECF No. 301]. According to John Hancock, Plaintiffs have not shown that this language was present in any pre-October 7, 2014 contracts and, thus, there is no common question surrounding the meaning of "Total Revenue used toward Plan Cost."

In support of its position, Defendant cites *Ohio State Troopers Ass'n, Inc. v. Point Blank Enters., Inc.*, 347 F. Supp. 3d 1207, 1219-20 (S.D. Fla. 2018) and *Carcia v. Kashi Co.*, 43 F. Supp. 3d 1359, 1393 (S.D. Fla. 2014). However, Defendant's reliance on each of those cases is misplaced, as a careful reading of the decisions reveals the issue was not with *commonality*, but was with Article III standing, which is a different hurdle.

Moreover, even if the pre-October 7, 2014 contracts contain different language, this is not fatal to Plaintiffs' ability to represent the class as far back as March 25, 2013. *See Allapattah Servs. v. Exxon Corp.*, 333 F.3d 1248, 1261 (11th Cir. 2003) (holding that even though not all of Exxon's contracts with the class plaintiffs were identical, "[b]ecause all of the dealer agreements were materially similar[,] ... [w]hether [Exxon] breached [its] obligation[s] was a question common to the class and the issue of liability was appropriately determined on a class-wide basis").

Further, the Undersigned's ruling on commonality was not based on the interpretation of this phrase as used within the Plan; it was based on the common questions of law and fact (e.g., is John Hancock a fiduciary, did John Hancock disclose

6

that it received Foreign Tax Credits, are Foreign Tax Credits compensation?, etc.). This ruling is not impacted by the specifics of this contract language as raised by Defendant.

Defendant also raises a first-time argument that ERISA's statute of limitations prevents Plaintiffs from suing for conduct prior to 2014. Because this was raised in a memorandum for which Plaintiffs were not authorized to file a response, I will not reach any conclusions on this issue.

For these reasons, the Undersigned finds that Plaintiffs are qualified to (i.e., they have standing) represent the Proposed Class for claims beginning on March 25, 2013. Phrased differently, they have standing to also represent the class for the 18.5-month gap.

**DONE AND ORDERED** in Chambers, in Miami, Florida, on January 13, 2022.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to:**
All counsel of record